The case for argument is 20-2284, Jump Rope Systems v. Coulter Ventures. Greg Ahrens on behalf of the patent owner, Jump Rope Systems. We're here seeking your reversal of the PTAB's decision to invalidate all claims of the two patents that were subject to IPR. We have a kind of a threshold issue, which is the use of hindsight in this case from the get-go. Can I ask you a question? Yes. Aside from the hindsight, would you say the opposite of that? If there's a motivation to combine, if there were a motivation to combine expressly in the prior art references, for example, would that then defeat your hindsight argument? If the prior art itself actually had a motivation to combine somewhere within the confines of the prior art itself, I think that can overcome hindsight because it's sort of the opposite of hindsight because there's an explicit motivation. Can KSR say that there didn't have to be an explicit motivation? Are you saying after KSR, hindsight in there is in every case? I'm not saying that. We acknowledge that KSR does not require an explicit motivation or teaching or suggestion to combine within the prior art. It can be found within the context of the prior art as a whole, within the experience of a person of ordinary skill in the art. Is the question of whether the board found a motivation to combine, is that analogous to the question of whether there's hindsight? I mean, you're arguing that there was an incorrect reliance on hindsight to determine that there was a motivation to combine. That's reviewed for substantial evidence, right? Because we're really looking to see whether the combination was fueled by hindsight or whether it was fueled by a motivation to combine properly under KSR. Again, factual question reviewed for substantial evidence, right? That's correct. That is correct. This court as a whole, however, reviews the obviousness determination to know. I read your brief to have two issues. One is this hindsight motivation to combine argument, which presents a substantial evidence question. And the other one is even, I guess, assuming the facts as found by the board that there's claims would not have been obvious as a legal matter. Do I read your brief correctly? I believe that's an accurate way of looking at our briefs. And so this case, and the reason that I think it's important to consider the question of hindsight, may stem from one of the very first things in the record from the patent owner, or I'm sorry, the petitioner's expert. And this is found at Appendix 605. And this statement occurs in a couple of places. But notably in paragraph, the last sentence of paragraph 89 on Appendix 605, wherein Dr. or Mr. Lenz says, it's my opinion that a posita seeking to provide swiveling motion would have been motivated to do thus and such. Well, right in the very wording, it presumes that a posita is seeking to provide swiveling motion. And that's just the beginning of the problem. The references themselves, for example, wolf, which is the primary reference. Wolf has in it a description and a discussion about twisting, which might be analogous to the winding issue that's been talked about in the briefs. And then it also talks in a different context about rope shearing, or shearing of the cord. So the jump rope has a handle, and then a pivoting or rotating mechanism, and then the actual cord or rope itself. So in the context of this prior art, you've got the wolf pat, which is the primary reference. Can I ask you a question? You know, at the beginning of this paragraph that you pointed out to us, it says, in my opinion, the person of skill in the art would be motivated by the prior art's teachings regarding the benefits of swiveling, such as Terpers, and it has a site. It says, to modify wolf to provide swiveling. So how is that then hindsight? I mean, I understand your point. If you were to say, you know, it's my opinion, the person of skill in the art seeking to achieve the claimed invention would have wanted to achieve the claimed invention, that that is hindsight. But here, there's a sentence at the beginning of this paragraph you're relying on that makes it clear why it is desirable to achieve swiveling. Why is that countering, then, your argument? Why is that not countering your argument of hindsight? For a couple of reasons. First of all, so they cite to Terper for the premise that was stated in the paragraph 89 of the expert's declaration. And so Terper, which is appendix 832 through 841, has a swivel ball joint inserted into the handle end. And Terper makes it clear that the oscillation and that the rotation within the handle, and this is found at 834 around lines 12, the invention allows the rope to easily rotate inside the handle and to externally oscillate, thus avoiding shearing. So there's two predicate issues that have been raised allegedly in the prior art. One is shearing, that it can occur in the rope or the cord. And then the other is winding, where the rope somehow gets twisted around itself. Terper, and then the Salau reference, which I'll get to in a moment, both make it clear, as Wolfe does itself, that because you don't have a fixed point of the rope at the handle, you've got some mechanism to allow the rotational movement between the end of the rope and the handle, you're not going to have winding or twisting. And it just, frankly, it makes sense from a logic standpoint. Think about having a piece of rope that's going to twist where there's fixed points. But in a jump rope handle, where there's rotational motion that's allowed, which is occurring in terper, you don't have winding, so winding is not an issue. You don't have winding in the Salau reference that explicitly says, and Salau is at Appendix 814, the subject of this invention is an improvement to jump ropes that enables the cord to rotate freely inside the handles without the danger of winding the cord onto itself. So now you don't have anything except teaching that allowing rotational connection between the handle and the rope end avoids this issue of winding. So this is just a known thing. It's a fact from Salau in 1908. It's a fact from Terper in 1977. And Wolfe, therefore, also includes that, although it might not be as explicitly stated, because you have rotation of a portion of the handle and the arm, which rotates within it. So you've got this direct or indirect connection between the rope end and then the mechanism that allows the rotation relative to the handle. So there's no issue of cord winding that exists. And because you don't have an issue of cord winding that exists, there's no motivation to solve that problem by adding a swivel joint as opposed to a hinge joint as you would have in Wolfe. The second issue that's been raised and was talked about a lot, especially at the PTAB hearing, was the issue of shearing. So now you've got a rope or a cord that comes out of a handle, and potentially... So the board, with respect to the hinge versus the swivel, said that these were simple substitutions for one another, right? So are you challenging that factual finding? We are. And we went at great length with Dr. Blair's declaration, and it's part of the appendix I can cite to in a moment, where he explains the extremely tortuous path to actually take the portion of turper that they're relying upon, which is the swivel joint, and to retrofit it into a device, the device of Wolfe. Frankly, it doesn't give any greater freedom of rotation to the cord itself by making that substitution. And it's not a simple substitution. There's upwards of 15 different steps that are required. I will say that our expert was deposed on this topic and was asked questions like, would a person of ordinary skill in the art know how to take a screwdriver and insert it into a screw and untwist it? Would they have a reasonable expectation that if they turned the screwdriver, the screw would become loosened? That is all well and good. And each discrete individual step, in fact, could be performed. And they're not outside the scope of what a person of ordinary skill in the art would know how to do or be capable of doing. The question is, why would they be doing this to begin with? That's the whole predicate of the problem here. The board simply has adopted the, what we believe is, conclusory opinions of Mr. Lenz, who says that, sure, it's just a simple substitution. You can take this part and you can put it into that part. Now, this is a mechanical case. So what is your main point? That there wouldn't have been the motivation to do that? Or that you're arguing you wouldn't have thought to do it? Not that it was mechanically challenging to do it once you figured out that's what you wanted to achieve? I'm not clear on where you're finding the deficiencies in. Yes, Your Honor. Well, a couple of things. The last point first that you just raised. And that is that there are a lot of steps. There are upwards of, as you said, about 15 different steps that would be required by a person of skill in the art to actually make the substitution and modification to the Wolf Reference. But the underlying issue is, this motivation is allegedly presented by an issue of shearing of a cord, or winding of a cord. That's the motivation that's ascribed. And it's just a false premise. There's no issue of cord winding in the Wolf Reference as it sits there. And there's no issue of cords. Did you make this argument before the Board? Yes. The shearing argument? Yes, definitely. And I'd like to, I believe Judge Prost, I answered your question. If I didn't, I can revert to it. But specifically, the passage within the Wolf Reference, which is at A793-794, it talks about the potential for cord breaking at the place where it is inserted into the second arm of the mechanism that it's affixed to. And it's simply, and I can just kind of use my hand for this, because you've got an element, which is the second arm, and shown in the figures in Wolf, generally pointed to as, we'll call it 68, this is figure 2. And then you've got the cord that goes up into the second arm and it bends over the top portion and then it folds back on itself. And the shearing, or the breaking of the cord that's being talked about, has to do with this internal construction of this arm. And all well and good, there is discussion of cord breaking at that point. That is not the type of cord breaking that would be a potential issue in a jumper, however. The type where you've got the cord coming out of a handle and because of the rotational movement, the cord is getting oscillated back and forth and it can break at the point at which it exits from the handle. So, Wolf, however, addresses this problem. In fact, Wolf, the whole premise of Wolf, is solving this problem of having a cord breakage within this second arm. So, the issue that's presented of potential cord shearing, first of all, it's a misunderstanding or a misinterpretation of Wolf to say that that's the shearing that's being talked about in Wolf. And second of all, Wolf solves the problem itself. You're looking at, are you referring to page A37 of the board's opinion? Because there, the board says, Wolf addresses a different shearing problem, right? Yes, but they do acknowledge that. And yet, in what is, to me, the failure of the board is looking at the evidence as a whole and still finding obviousness when the underlying issue of being shearing is the one and only, almost the one and only, maybe it's one of two issues that is presented by the petitioner that you want to avoid shearing and Wolf has shearing, therefore, you need to modify Wolf. It's just not true. I think the board was saying, and correct me if you think I'm wrong, but I thought the board was saying, well, Wolf addresses a different shearing problem, Terper addresses a shearing problem, and it would have been obvious to modify Wolf in order to also solve the problem presented by Terper. That is an analysis of what they have said. It's just incorrect because Wolf, albeit acknowledged by the board, addresses shearing within its own device. It's a different type of shearing and the board does acknowledge that. There's no discussion or scant discussion of any other kind of shearing in Wolf. It does say a couple of pages later in Wolf... Your position is the type of shearing that Terper is concerned about would not ever present itself in Wolf. Is that your position? I just want to make sure I understand. I believe that's probably a very accurate way of saying it and I can say it with a little more authority because Wolf itself talks about using a, and this is on page A795, that there's a truncated cone at the end of the second arm which the rope passes through and prevents any issue of shearing at the exit point of the rope from that portion of the arm mechanism. I can't remember. Did both sides present expert testimony on this point? Yes. I had reserved some amount of time and I realize that I'm... Okay. Why don't we... Thank you. Thank you. Good morning, Your Honor. Louis DeSanto for Respondent Colbert Ventures. May it please the Court. Your Honor, before I get into specific points... Counselor, could you speak up a little bit? Yeah, sorry, Your Honor. I have a very low voice. If I trail off again, please let me know. Before I get into direct responses to counsel's arguments, I'd like to just very briefly state that there were four factual independent bases provided by the Board to support the motivation to combine and if this Court agrees with any one of them, the case can be affirmed. The first one was the combinations according to known methods that yield predictable results. The second was that the combination was a simple substitution of a swivel joint for a hinge joint, and both were used in the context of jump rope technology. And the other two were expressed teachings found in two examples of prior art. One being Turper that showed the swivel joint and the benefits of a swivel joint to reduce shearing that can be caused when the rope rotates on itself and the other piece of prior salute that describes using a swivel joint allows the rope to avoid winding on itself because any winding in the rope can be unwound by the ball. If the Court agrees with any one of those positions, this case can be affirmed. And now I'd like to speak directly to counsel's arguments regarding hindsight. And I had planned to bring up the testimony of the petitioner in the case, excuse me, the appellee here and petitioner before the Board and their expert testimony of Mr. Lenz. And specifically in the appendix, page 605 and 606, paragraphs 88, 90, and 91. And at the top of paragraph 89, Mr. Lenz expressly refers to one of the prior art, Turper, and identifies the teachings in Turper that swivel joint can be used to avoid the shearing forces in a jump rope. And earlier in his testimony, he explains what is meant by shearing forces in Turper, and that can be found in paragraph 81, starting on page 601 of the appendix. So he proceeds to identify the teaching in the prior art and explain why one of ordinary skill in the art based on those teachings would then seek to impart those qualities into the rope of Wolf. And also next, he proceeds to reference the other piece of prior art and in this paragraph, it's exhibit 108, that's the Salu reference. Where the Salu reference similarly explains that when you use a swivel joint in a jump rope, the rope can rotate around its own axis and then avoid twisting on itself. Thereby, based on these two teachings, one skill in the art would be motivated to include a swivel joint in Wolf, and we can explain why. In Wolf, Your Honor, the rope is connected to the second arm of Wolf, and the second arm of Wolf is connected to a hinge. And that hinge joint is a fork. And when the second arm is in that hinge, that second arm simply cannot rotate about its own axis. Therefore, the rope that's attached to the second arm, if there's any bending or twisting in that rope, it cannot be unwound because the source is stuck. There was no dispute on this point. Their expert testified, they agreed, that the second arm of Wolf could not rotate about its own axis. Therefore, if there's any sort of bending or winding that's implemented into the rope of Wolf while jumping rope, and as Mr. Lenz testified before the board, the bending and twisting can be imparted by just movement of the ropes while you're jump roping, which is very intuitive. The back of the rope lags behind you and you're driving it forward and it bends and twists as your wrists are twisting. Using the swivel joint there would allow any sort of that bending to be unwound at the joint and free it up. Therefore, those expressed teachings provide the motivation, and the board laid it out in detail in their ruling, and it's referenced in detail in order with a detailed explanation why in Mr. Lenz's testimony, at least 88, 90, and 91. In accordance with this court's decision in Ray Metcalfe, which we also cite in our brief, when there is this style of direct teaching in the prior art that would provide a motivation to combine, there is no hindsight. And I'd like to just respond, other than I'd like to respond to a few other points that counsel raised. Counselor, with respect to the hindsight argument, does it matter that what we're dealing with is an extraordinarily simple technology? Yeah, I think that cuts against the hindsight argument, Your Honor. Yeah, I can't remember. I remember reading that somewhere. I can't recall where, but my understanding is yes. The simpler the technology, and the more expressed the teaching, it's hard to find a hindsight position in that regard. Speaking of that, who's the person skilled in the art? It's actually a decent, highly skilled level, Your Honor. We referenced that in... There was no dispute on that either. It was someone with a college degree in mechanical engineering at least, and some years of experience or the equivalent of that. We're not talking about someone off the street. And I respectfully submit that this stuff is intuitive enough that someone with far less experience could have figured this out as well, especially in view of the expressed teachings that are in the prior art. And even if we set this aside, I'd like to raise this additional point here, that even if there was a legitimate dispute that wolf could wind on its own, or there's no shearing problem, or there's no winding problem in wolf. In accordance with this court's ruling in Unwired Planet, for example, one of ordinary skilled in the art can pursue the benefits that are disclosed in the prior art and modify a reference just to try to provide those benefits. And here, the board provided credit to that type of benefit because there's no dispute that the rope of wolf cannot rotate about its own axis. So the board itself stated that in this combination, by providing this combination, the jump rope of wolf earns another element of movement, another dimension of movement. Therefore, in view of Unwired Planet alone, one of ordinary skilled in the art could pursue the benefits that are disclosed in Terper and Wolf. And with regard to the number of steps the board, the number of steps that would be required to incorporate the proposed change of including the swivel joint of wolf into Terper, that was considered and rejected by the board in detail and that can also be rejected based on law. And that is, there's no requirement to show obviousness by having bodily incorporation of Terper or Sulu into wolf. It's just the teachings that matter alone. And in any event, also, the patent owner here didn't submit any evidence to suggest that or make the position that one of ordinary skilled in the art couldn't do those steps to make the combination. And the last thing I'll be done is with regard to the argument simple substitution, there's only I believe one sentence provided in opposition to that analysis provided by, there was only one sentence provided by the appellant here in opposition to that analysis provided by the board. So that's very detailed position that the board provided and one sentence to say that it's not good enough it shouldn't be good enough in and of itself. Before you sit down, I want to ask you one question The patent owner argues that the board erred by not considering the alternative grounds that were instituted upon If hypothetically we were to disagree with you and say that there wasn't substantial evidence to support the board's reason for modifying, the board would consider that alternative grounds on remand, right? Wouldn't they have to consider that? I think if this court tells them to, yeah. You think that we could just say, oh, you don't have to consider those other grounds under SAS? Or consider the other grounds for Terper the Wolf-Terper grounds that weren't detailed here because there was other evidence provided for the combination of Wolf and Terper that the board didn't rely on I might be misunderstanding your question. If we were to disagree with the board's decision here, there would still be work for the board to do, right? And so they would ultimately consider those alternative grounds that were instituted under SAS, right? That's correct. There's no requirement to do so. I'm unaware of any law that says they have to consider all the grounds They have to consider all the claims under SAS or whether they have to consider every single ground We actually have case law that says they have to consider every ground. They have to institute on every ground. We have cases that say that. But there's a slightly different question here which is in a final written decision does the board have to address each and every ground that is presented to it in its final written decision? Or could it just address one ground and say we think this is strong. We're done. And then on appeal, if we disagree with them then they would have to consider the alternative. That's my understanding. Thank you. Thank you, Your Honor. I did want to address what Judge Stoll was just asking about and that has to do with the Wolfe plus Bradley combination that was a ground on which the IPRs were instituted but did not form a basis of the final written decision. I'm not aware of a case, and perhaps I'm wrong that explicitly says that the board has to have its final written decision address all of those different grounds. But certainly, as you just pointed out the case law is clear that in the institution stage they must. I think it's not a good precedent for a board not to address it in this eventuality and that is this court can, under TQ Delta for example reverse the board. It doesn't need to remand to the board. It can reverse the board and say yeah, we don't think the evidence and the record as a whole in the framework of obviousness actually results in unpatentability. Therefore, we're reversing. Were there alternative grounds remaining in the TQ Delta case? I don't think so. No, I wasn't suggesting that. There probably wouldn't have been a reversal. What's the beef that you have? Leaving aside what's compelled by the law where's your harm? Where's the harm to you? With regard to the failure to address the Wolfe plus Bradley reference? It's this, Your Honor. I believe that it's going to prolong things potentially should this court reverse on the Wolfe plus Turper combination and find that the claims were not proven to be unpatentable. Then you have a situation where that's reversed. I take your point. What are we supposed to do with that? Let's assume we are ready to affirm the rest of it and the only thing we agree with you on is that it probably would have been better globally for judicial efficiency to address all alternatives. What then? In that eventuality, it probably doesn't require doing anything. However, if you're going to reverse and we would urge you to do that, I think I would go so far as to ask that you say there doesn't need to be a remand to the PTAB on the Wolfe plus Bradley reference because Bradley is just more deficient than Turper was and isn't even really in the context of the invention. Thank you very much.